IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| CALNET, Inc., | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. |
| | ) 1:14-cv-401  LOG/JFA |
| CloudSilver Consulting LLC, *et al.*, | ) |
| Defendants. | ) |

**BRIEF IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
BY DEFENDANTS CLOUDSILVER, SCOLARO AND MENON**

CloudSilver Consulting LLC, ("CloudSilver"), Anthony F. Scolaro ("Scolaro"), and Kris Menon ("Menon") (collectively, "Defendants"), by counsel, hereby submit their brief in support of their Motion to Dismiss the First Amended Complaint in its entirety, and state as follows:

**INTRODUCTION AND BACKGROUND**

Plaintiff filed its suit on April 15, 2014. These Defendants timely moved to dismiss the complaint in its entirety on May 7, 2014, based on 12(b)(6) and 12(b)(1). (ECF # 4).  One business day before the scheduled hearing on that motion, CALNET filed an 11th hour first amended complaint.  (ECF # 24) ("FAC" or "Amended Complaint").  The Court removed the hearing from the May 30th docket.

However, despite using its opportunity to amend, CALNET has done nothing to cure the jurisdictional defect—the clear failure to plead RICO in what is an ordinary employment-related dispute. Even with the benefit of clear Fourth Circuit case law cited in the first Motion to Dismiss, Plaintiff has failed to plead the required RICO predicate acts and the required pattern of racketeering, eradicating any arguable basis for federal jurisdiction.  Indeed, CALNET's primary

change in the FAC regarding RICO involved relocating the RICO-based counts—moving them from the back to the front—but without making any substantive changes.[1] Plaintiff's own words highlight the futility of the FAC and any further amendment, as demonstrated below. Moreover, to the extent CALNET seeks to amend again in response to the instant Motion, this Court should deny as such effort for futility. *See New Beckley Mining Corp. v. United Mine Workers of America*, 18 F.3d 1161, 1164 (4th Cir. 1994).

This case involves typical claims where a former employer, CALNET, alleges that its former employees wrongfully competed against their employer prior to their departure from the company and allegedly used the company's intellectual property in the process. Indeed, the Amended Complaint still emphasizes that "**the intended purpose of the conspiracy was to harm a company with its principal place of business in Virginia, *i.e.*, CALNET**." (ECF # 24, FAC at ¶14) (emphasis added). In relevant part, it further states:

> 57. A purposed of the CloudSilver Scheme and artifice was to divert business opportunities from CALNET.
>
> 58. Another purpose of the CloudSilver Scheme and artifice to defraud was to compete with CALNET.
>
> 59. Mr. Menon intended to compete against his employer through the CloudSilver Scheme and purposefully concealed this fact from CALNET.
>
> 60. Mr. Scolaro intended to compete against his employer CALNET through the CloudSilver Scheme and purposefully concealed this fact from CALNET…
>
> 71. **The essence of the Scheme is that Messrs. Menon, Mohideen and Scolaro conspired to and did divert business opportunities from CALNET.**
>
> 101. These actions did cause CALNET actual harm insofar as the cover-up was successful and CALNET did not discover that Messrs. Menon and Scolaro owned CloudSilver until February 2014 thereby causing CALNET to pay the salaries of Messrs. Menon and Scolaro for at least seven (7)

---

[1] As reflected in the mark-up of the FAC, Plaintiff added no new facts to the RICO counts, but instead added more pure legal conclusion.

>months of faithless service, while also allowing them access to its information technology network and confidential business information.

The only basis for federal jurisdiction here would stem from the Counts formerly known as the last two counts in Plaintiff's 13-count Complaint, RICO (12) and RICO conspiracy (13)—with wire fraud pled as the predicate acts. That is, in response to the first Motion to Dismiss, Plaintiff moved its RICO causes of action up front as Counts One (RICO conspiracy) and Two (RICO violation) and added a few legal conclusions—however, Plaintiff has not added or changed a single factual allegation that could rescue either of these causes of action. As demonstrated below, the FAC represents an exercise in futility, because the allegations demonstrate that CALNET has not and cannot plead a viable cause of action under RICO, as well as almost all of its state law claims.

## ARGUMENT

### Standard on Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Conclusory allegations will not survive a motion to dismiss. *Id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *citing Bell Atlantic. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013) (no presumption of truth for "naked assertions" and "unadorned conclusory allegations" devoid of "factual enhancement.") (citations omitted).

The complaint must set forth sufficient factual allegations, taken as true, "to raise a right to relief above the speculative level" and "nudge [the] claims across the line from conceivable to plausible." *Vitol,* 708 F.3d at 543 (quoting *Twombly,* 550 U.S. at 555, 570). Additionally, allegations that are made upon "information and belief," without factual support, do not allow

the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1268 (11th Cir. 2009); *Skillstorm, Inc. v. Electronic Data Systems, LLC*, 666 F. Supp. 2d 610, 619 (E.D. Va. 2009).

In cases involving fraud, plaintiffs "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Among other things, a plaintiff must plead "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Arnlund v. Smith*, 210 F. Supp.2d 755, 760 (E.D. Va. 2002) (citing *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)); *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989). Moreover, the complaint "must identify, with particularity, each individual defendant's culpable conduct; defendants cannot be grouped "together without specif[ication of] which defendant committed which wrong." *Arnlund*, 210 F.Supp.2d at 760 (internal citations omitted). This need for detailed allegations applies especially to cases alleging violation of RICO based on fraud. *See Menasco*, 886 F.2d at 684.

### I. THE AMENDED COMPLAINT MAKES CLEAR CALNET CANNOT PLEAD A RICO CLAIM, ELIMINATING THE ONLY BASIS FOR JURISDICTION.

The Fourth Circuit has underscored that the allegations must show a threat of criminal activity to invoke RICO: "As we have repeatedly noted, however, RICO treatment is reserved for conduct "whose scope and persistence pose a special threat to social well-being." *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989); *US Airlines Pilots Ass'n v. AWAPPA, LLC*, 615 F.3d 312, 317 (4th Cir. 2010)(NC) ("These [RICO] penalties are primarily designed to provide society with a powerful response to the dangers of organized crime.") (citing *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 245 (1989)). In assessing the plausibility of Plaintiff's RICO claims, it is important to keep in mind that RICO "'does not cover all instances of

wrongdoing. Rather it is a unique cause of action that is concerned with **eradicating organized, long-term, habitual criminal activity.**'" *US Airline Pilots Ass'n v. Awappa, LLC,* 615 F.3d 312, 317 (4th Cir. 2010) (quoting *Gamboa v. Velez,* 457 F.3d 703, 705 (7th Cir.2006) (emphasis added). The RICO claims in the instant case represent the type that drives such concerns.

Even as amended, CALNET's RICO counts fail on multiple independent grounds: (1) A seven-month scheme involving a single victim cannot constitute a pattern of racketeering; (2) Fourth Circuit case law clearly holds that a civil RICO plaintiff must plead a false representation and justifiable, detrimental reliance; (3) Similarly, Plaintiff has not pled that any alleged injury was proximately caused by wire fraud; and (4) The FAC otherwise does not satisfy 9(b). Despite Plaintiff's earlier protestations, the Fourth Circuit clearly holds that where a RICO plaintiff relies on wire fraud as the predicate act, the plaintiff must plead and prove reliance. *American Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 233 (4th Cir. 2004) (Va.); *GE Investment Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (citing *Chisolm v. Transouth*, 95 F.3d 331, 337 (4th Cir. 1996) (Va.)). Moreover, CALNET must have pled that its justifiable, detrimental reliance on the purported wire fraud proximately caused any injury. *Trigon*, 367 F.3d at 233.

The FAC does not approach satisfying 9(b). However, this Court need not address the multitude of 9(b) deficiencies; the continued failure by CALNET to plead the elements, as well as a pattern of racketeering and conduct that poses some threat of criminal activity, in and of themselves warrant dismissal. *See e.g.*, *GE Investment Private Placement Partners II v. Parker*, 247 F.3d 543, 550- 551 (4th Cir. 2001) (Md.) (affirming dismissal where no pattern of racketeering pled where the scheme lasted 17 months and at most 2 years and without permitting leave to amend) ("We do not reach Plaintiffs' challenge to the district court's (b) determinations because . . . they nonetheless fail to establish a pattern of racketeering activity"); *see also US Airline Pilots Ass'n*

*v. Awappa, LLC,* 615 F.3d 312, 320 (4th Cir. 2010) (Md.) (confirming no abuse of discretion where court denied leave to amend RICO for futility).

> **A. FOURTH CIRCUIT CASE LAW DEMONSTRATES THAT A SEVEN-MONTH SCHEME FAILS TO CONSTITUTE A PATTERN OF RACKETEERING.**

Nothing in the FAC remotely suggests that there is any ongoing criminal threat from the so-called CloudSilver Scheme, which lasted for a mere seven months and had a natural ending point—the discovery of CloudSilver by CALNET.[2] In fact, the Plaintiff makes clear the alleged scheme ended when it asked Defendants Scolaro and Menon about CloudSilver, they acknowledged its existence (Compl. at ¶¶ 57; FAC at ¶¶ 116, 117 and 127), and then CALNET terminated them.

This alleged short-lived, seven-month scheme, which was directed at a single purported victim to divert business opportunities to themselves, epitomizes the type of claim that the courts caution against. *GE Investment*, 247 F.3d at 549. The Fourth Circuit in *GE Investment* found that an alleged scheme lasting 17 months (and two years at most) failed to satisfy the pattern requirement: "A plaintiff cannot demonstrate open-ended continuity if the racketeering activity has a "**built-in ending point**, and the case does not present the necessary **threat of long-term, continued criminal activity**." *Id.* (emphasis added); *see also Menasco,* 886 F.2d at 684 (finding no continuity where "[d]efendants' actions were narrowly directed towards a single ... goal," "involved but one set of victims," and took place over a relatively short period of time); see *also Flip Mortgage Corp. v. McElhone*, 841 F.2d 531, 538 (4th Cir. 1988) (finding no pattern where alleged conduct took place over seven years); *UniQuality, Inc. v. Infotronx, Inc.,* 974 F.2d 918, 922 (7th Cir. 1992) (seven to eight months insufficient); *Aldridge v. Lily–Tulip, Inc. Salary Retirement Plan Benefits Committee,* 953 F.2d 587, 593 (11th Cir.) (six months to a year is

---

[2] The Supreme Court has explained that "'[c]ontinuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.,* 492 U.S. at 241, 109 S.Ct. 2893. Closed-ended continuity exists when the "series of related predicates extend[s] over a substantial period of time." *Id.* at 242, 109 S.Ct. 2893. *US Airlines Pilots*, 615 F.3d at 318.

insufficient); *Hughes v. Consol–Pennsylvania Coal Co.,* 945 F.2d 594, 609–11 (3rd Cir. 1991) ("twelve months is not a substantial period of time"), *cert. denied,* 112 S.Ct. 2300 (1992); *Thompson v. Paasche,* 950 F.2d 306, 311 (6th Cir. 1991) (no pattern where alleged scheme was made inherently short-lived by the limited number of lots that defendant had to sell).

### B. THE APPLICABLE LAW EXPRESSLY REQUIRES A RICO PLAINTIFF RELYING ON WIRE FRAUD TO PLEAD "CLASSIC FRAUD."

Arguing against the original Motion to Dismiss and the myriad of 9(b) deficiencies described, CALNET proclaimed it had no obligation to plead falsity of statements or justifiable reliance in its wire fraud allegations. *See* ECF #17, Opp. to MTD at p. 4 (arguing that plaintiff does not have to allege false statement) and p. 7 (arguing that plaintiff does not have to allege that the wire fraud caused the injury). Its FAC reflects these beliefs.

The Fourth Circuit, however, specifically has addressed the reliance requirement on multiple occasions. For example, *Chisolm v. Transouth*, 95 F.3d 331, 337 (4th Cir. 1996) (Va.), states: "Where a plaintiff alleges predicate acts of mail and wire fraud as a proximate cause of its injury, plaintiff "must have justifiably relied to his detriment on the Defendant's material misrepresentations." Most recently, the Fourth Circuit in *American Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 233 (4th Cir. 2004) (Va.), stated:

> To recover civil RICO damages, however, an individual must also allege that he was injured "by reason of" the pattern of racketeering activity**.** *Id.; see also* 18 U.S.C.A. § 1964(c). To meet this burden with respect to mail fraud and wire fraud, a plaintiff must "*plausibly* allege both that [he] detrimentally relied in some way on the fraudulent mailing [or wire] ... and that the mailing [or wire] was a proximate cause of the alleged injury to [his] business or property." *Chisolm,* 95 F.3d at 337 (emphasis added). **The alleged fraud "must be a 'classic' one[,] ... the plaintiff must have justifiably relied, to his detriment, on the defendant's material misrepresentation."** (emphasis added).

Because it is clear that CALNET has failed to state a viable predicate claim for wire fraud, Amended RICO Counts One and Two fail.

7

### C. THE APPLICABLE LAW REQUIRES THAT A CIVIL RICO PLAINTIFF RELYING ON WIRE FRAUD MUST PLEAD PROXIMATE CAUSE.

The FAC fails because CALNET has not and cannot plead proximate cause. The Fourth Circuit has specifically held that a plaintiff must plead and prove proximate causation based on the RICO predicate acts and has reiterated this point on several occasions. "To recover civil RICO damages, however, an individual must also allege that he was injured "by reason of the pattern of racketeering activity. *Trigon*, 367 F.3d at 233 (citing *Chisolm*, 95 F.3d at 336 and 18 U.S.C.A Sect. 1964(c).  "To meet this burden with respect to mail fraud and wire fraud, a plaintiff must "*plausibly* allege that [he] detrimentally relied in some way on the fraudulent mailing [or wire]…and that the mailing [or wire] was a proximate cause of the alleged injury to [his] business or property." *Id.*; *McMahen*, 2012 WL 2589229, at *6  (4th Cir. 2012).

As demonstrated previously, there are numerous failures to comply with 9(b), including what was said, what statements were supposedly fraudulent, what was obtained by them, who sent them, etc.  Rule 9(b) aside, however, no plausible argument exists that the Plaintiff detrimentally relied in any way on any of the emails or calls—as evinced in part by its argument that no such reliance is necessary.

Further, the purported RICO predicate acts of wire fraud cannot be the proximate cause of any alleged injury to CALNET.  For example, Plaintiff points to a cover-up via the calls and emails.  (FAC at ¶¶ 101; 60-63; 65-66).  Based on its own allegations, CALNET's knowledge of any call or email identified in the amended complaint would have revealed (and ended) the so-called CloudSilver Scheme.  *Lundy v. Catholic Health System of Long Island*, 2103 U.S.App. LEXIS 4316 (2d Cir. Mar. 1, 2013) (quoting *United States v. Maze*, 414 U.S. 395, 403 (1974) ("Mailings that thus 'increase[] the probability that [the mailer] would be detected and apprehended' do not constitute mail fraud.").

## II. PLAINTIFF FAILS TO STATE VIABLE CLAIMS IN AMENDED COUNTS THREE, FOUR, SEVEN, EIGHT, TEN, ELEVEN AND TWELVE.

The FAC confirms the futility of any further amendment for the following state law counts: Four (breach of implied covenant of good faith); Seven (common law fraud); Eight (constructive fraud/negligent misrepresentation); Ten (unjust enrichment); Eleven (California unfair competition); and Twelve (tortious interference). Defendants also move to dismiss the Breach of Contract in Count Three, where amendment is likely futile.

### A. Virginia Does Not Recognize a Separate Cause of Action for Breach of the Implied Duty of Good Faith and Fair Dealing in Count Four.

This Court has repeatedly observed that Virginia does not recognize an independent claim for breach of the implied duty of good faith and fair dealing. *Goodrich Corp. v. BaySys Technologies, LLC*, 873 F. Supp. 2d 736, 742 (E.D. Va. 2012) (citing *Charles E. Brauer Co., Inc. v. NationsBank of Va., N.A.*, 251 Va. 28, 33 (1996)); *see also L&E Corp. v. Days Inns of America, Inc.*, 992 F.2d 55, 59 n.2 (4th Cir. 1993) (same). Indeed, this Court has specifically noted "the Commonwealth does not recognize a cause of action for breach of an implied covenant of good faith and fair dealing *in employment contracts* . . . ." *Devnew v. Brown & Brown, Inc.*, 396 F. Supp. 2d 665, 671 (E.D. Va. 2005) (emphasis added). The applicable law demonstrates that dismissal is warranted.

### B. The Fraud and Constructive Fraud Claims in Counts Seven and Eight Fail, Because CALNET (i) Plainly Alleges the Fiduciary Duties Breached Arose from Employment Contracts; and (ii) Fails to Plead the Elements.

To state a claim for fraud in Virginia, a plaintiff must demonstrate "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled."

9

*Brunckhorst Co. v. Coastal Atl., Inc.*, 542 F. Supp. 2d 452, 460 (E.D. Va. 2008) (*quoting Winn v. Aleda Constr. Co.*, 227 Va. 304, 308, 315 S.E.2d 193 (1984)).

### 1. CALNET has not alleged any duty outside of the alleged employment agreements.

The Economic Loss Rule bars any fraud claim. "Where the duty that gives rise to the alleged misrepresentation is one that is required by contract, there can be no recovery in tort." *Brunckhorst Co., L.L.C. v. Coastal Atl., Inc.*, 542 F. Supp. 2d 452, 460-61 (E.D. Va. 2008); s*ee also Gen. Assur. of Am., Inc. v. Overby-Seawell Co.*, 893 F. Supp. 2d 761, 780 n.30 (E.D. Va. 2012), *aff'd* 553 Fed. App'x 200 (4th Cir. 2013).[3] The court looks at the source of the duty to determine if the claim is properly framed as a breach of contract or as a tort. *Richmond Metro.*, 256 Va. at 558. Here, the plain words of the FAC underscore that the so-called fraud arises out of CALNET's alleged employment contracts with Defendants Scolaro and Menon and their alleged breaches. In Amended Count Six, Plaintiff specifically alleges that Defendants Menon and Scolaro owed fiduciary duties to Plaintiff, arising from their alleged respective employment agreements with Plaintiff. (FAC at ¶¶ 173-175). Para. 174 states: "Messrs. Menon's and Scolaro's **duties arose as a consequence of the employment and/or the specific entrustment by CALNET to perform their duties and responsibilities in good faith** and to refrain from engaging in self-dealing, conflicts of interest, placement of personal interest above CALNET's interest, and unauthorized acts on behalf of CALNET that are adverse to CALNET." (emphasis added). *Brunckhorst Co., L.L.C. v. Coastal Atl., Inc.*, 542 F. Supp. 2d 452, 460-61 (E.D. Va. 2008) ("[w]here the duty that gives rise to the alleged misrepresentation is one that is required by contract, there can be no recovery in tort."). Nowhere, however, does Plaintiff point to any other

---

[3] "To avoid turning every breach of contract into a tort," the Economic Loss Rule provides that, "in order to recover in tort, 'the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract.'" *Augusta Mut. Ins. Co. v. Mason*, 274 Va. 199, 205 (2007); *see also Richmond Metro. Auth. v. McDevitt St. Bovis*, 256 Va. 553, 558 (1998).

supposed source for any duty arising independent of the alleged employment contracts, rendering this claim fatally defective. *See Station #2, LLC v. Lynch*, 280 Va. 166, 177 (2010).

While it is generally true that an employee has the duty not to act adversely to the employer's interest, this duty still derives from the contractual employer-employee relationship. *See Augusta Mut. Ins. Co.*, 274 Va. 199, *supra* (insurance agent's breach of fiduciary duty to principal was not an independent tort that would allow fraud claim since the fiduciary duty arose *ex contractu*). In short, any duty allegedly owed by Defendants is rooted in contract, not tort.

2. **Plaintiff's conclusory allegations cannot sustain a claim for common law fraud in Count Seven.**

The fraud count also fails in the exact same fashion as the RICO counts; that is, the FAC fails to plead each element with the requisite specificity required by Rule 9(b). *See* Section I above. The only allegations offered to support Plaintiff's fraud claim are conclusory allegations lacking the specificity required by Rule 9(b). Plaintiff still does not identify the specific misrepresentations or omissions allegedly made, as required by *Harrison*, *supra*. It also does not identify which of the Defendants allegedly made the specific misrepresentations or omissions or what was obtained. This does not constitute pleading "the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d at 784.

Further, Plaintiff does not allege, other than in conclusory fashion, that CALNET relied specifically on any alleged misrepresentations or omissions, much less that such reliance resulted in damage to CALNET other than payment of Defendants' salaries. CALNET is required to identify the misrepresentations and describe its "actual and justifiable reliance" on Defendants' alleged misrepresentations. *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 827 (4th Cir. 1999). CALNET fails to meet this standard. For example, the Amended Complaint fails to describe

11

how CALNET actually relied upon the alleged misrepresentations or omissions and suffered damages by paying Defendants' salaries. It simply concludes that it did. The elements are not pled and the claim should be dismissed.

Revamped (partly) as constructive fraud, Amended Count Eight still fails for the same reasons as the fraud count in Count Seven, *supra*, because the elements mirror each other, absent intent. *Carlucci v. Han*, 907 F. Supp. 2d 709, 742 (E.D. Va. 2012) (fraud and constructive fraud are identical except for intent); *Haigh v. Matsushita Elec. Corp.*, 676 F. Supp. 1332, 1349-50 (E.D. Va. 1987) ("Virginia does not recognize any tort of negligent misrepresentation.").

### C. The Unjust Enrichment Count (Ten) Fails, Because CALNET alleges an Underlying Contract.

CALNET cannot maintain a claim for unjust enrichment, because (i) it alleges there is an underlying contract; and (ii) it does not identify retention of any cognizable benefit whose return should be required. For unjust enrichment, a plaintiff must show: (1) a benefit conferred on the defendant by the plaintiff; (2) knowledge by the defendant of the conferring of the benefit; and (3) acceptance or retention of the benefit in circumstances that render it inequitable for the defendant to retain the benefit without paying for its value. *Firestone v. Wiley*, 485 F. Supp. 2d 694, 704 (E.D. Va. 2007) (quoting *Nossen v. Hoy*, 750 F. Supp. 740, 744-45 (E.D. Va. 1990)). However, if there is a contract that governs the relationship, equity bars a claim for unjust enrichment. *WRH* Mortg., Inc.v. S.A. S. Associates, 214 F. 3d 528, 534 (4th Cir. 2000) ("Where a contract governs the relationship of the parties, the equitable remedy of restitution grounded in quasi-contract or unjust enrichment does not lie."). Because CALNET has plainly alleged the existence of contracts from which any obligation would lie, it cannot pursue unjust enrichment.

Moreover, Plaintiff cannot identify a benefit whose return is required. The gist of CALNET's claim is that Defendants were unjustly enriched, because CALNET did not discover

CloudSilver or that Defendants were allegedly bidding on projects for seven months and therefore continued to pay them salaries and benefits.[4]  It does not complain that they stopped working, doing their jobs or that they performed poorly.  CALNET has alleged no causal connection between Defendants' receipt of compensation for their work and the alleged bidding on projects that occurred over seven months.

Other plaintiffs have attempted this route without success.  *See e.g.*, *In re Capital One*, 952 F. Supp. 2d 770 (E.D. Va. 2013); *In re Pfizer Inc. Shareholder Derivative Litigation*, 722 F. Supp. 2d 453, 465-66 (S.D.N.Y. 2010). The *Pfizer* Court dismissed an identical claim of unjust enrichment based upon retention of salaries, benefits and "unspecified bonuses," and stated:

> Plaintiffs have not pleaded that defendants' compensation during this period was of extraordinary magnitude and have not cited any legal authority supporting the proposition that the mere retention of directors' and officers' ordinary compensation can sustain an unjust enrichment claim predicated on allegations that these defendants breached their fiduciary duties.

*Pfizer*, 722 F. Supp. 2d  at 465-66. This claim cannot stand for the same reasons.

> D. **Amended Count Eleven Fails, Because Telephone Calls from California Do Not Support Standing Under the California Unfair Competition Law.**

At the beginning of its FAC, Plaintiff emphasizes that Defendants Menon and Scolaro's wrongful conduct occurred in the Commonwealth of Virginia and that the entire conspiracy allegedly was targeted at CALNET in Virginia. (Amended Compl. at  ¶¶ 11, 14 and 18).  In contradictory fashion, CALNET later alleges that Defendants Menon, Scolaro and Mohideen violated the California Unfair Competition Law ("UCL"), § 17200 of the California Business and Professions Code.  However, CALNET is not a California resident, has not identified any wrongful conduct occurring in California and thus lacks standing under the UCL.

---

[4] Paragraph 184 for actual damages provides: "As a result of the CloudSilver Scheme, CALNET suffered a  loss equal to the amount of wages and benefits paid to Messrs. Menon and Scolaro since their breach of contract and breach of duty, through February 19, 2014, which is equal to an amount in excess of $400,000.00."

13

In California, it is "ordinarily presume[d] the Legislature did not intend the statutes of this state to have force or operation beyond the boundaries of the state." *Norwest Mortgage, Inc. v. Superior Ct.*, 72 Cal. App. 4th 214, 224-25 (1999). Accordingly, § 17200 does not allow claims to be brought by nonresident plaintiffs against nonresident defendants for conduct occurring outside of California. *See In re Nat'l. Western Life Ins. Deferred Annuities Litigation*, 467 F. Supp. 2d 1071, 1089 (S.D. Cal. 2006) (Pennsylvania resident could not state claims under § 17200 against Colorado corporation headquartered in Texas for purchases in Pennsylvania); *In re Mattel, Inc. Toy Lead Paint Prods. Liab. Litig.*, 588 F. Supp. 2d 1111, 1119 (C.D. Cal. 2008) ("statutory remedies may be invoked by out-of-state parties [only] when they are harmed by wrongful conduct occurring in California.").

Plaintiff apparently relies upon allegations that Defendant Mohideen placed telephone calls from California to Virginia to allegedly conspire with Defendant Menon. These nebulous conclusions constitute the extent of the alleged connection to California as to these Defendants. Such allegations cannot support standing under the California Unfair Competition law.

### E. Amended Count Twelve (Tortious Interference) Fails, Because it is Wholly Conclusory and Fails to Identify Any Wrongful Means.

The newly added tortious interference claim cannot withstand even cursory review, because it is based wholly on pure legal conclusions. (FAC at ¶¶ 210-219). Moreover, it fails to plead the most basic elements as required by long-standing case law in the Commonwealth. For example, the alleged employment agreements are presumed to be at will, and yet the Plaintiff does not identify any wrongful means allegedly used in the supposed tortious interference. *See Duggin v. Adams*, 234 Va. 221, 228, 360 S.E.2d 832 (1987); *American Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d at 228. These clear omissions warrant dismissal.

### F. The Breach of Contract Claims Fails to Comply with Rule 9 (c) or Meet the Plausibility Requirement.

The Third Cause of Action for breach of contract fails, because CALNET has not alleged it has satisfied all conditions to the enforcement of its rights. Rule 9 (c) requires that parties are to "allege generally that all conditions precedent have occurred or been performed." Fed. R . Civ. P . 9 (c) (emphasis added). It has not made any such allegation.

Additionally, the request for specific performance requires that CALNET plead that it has satisfied all conditions precedent.[5] More specifically, in Paragraph 233, CALNET seeks a judgment that would enforce the alleged terms of the employment agreements: (i) "Requiring Defendants to cease any and all activities that constitute direct competition with CALNET"; and (ii) "Requiring Defendants turn over all information and documentation that was produced by CALNET employees." *Cf. Flippo v. F&L Land Co.*, 241 Va. 15, 22, 400 S. E. 2d 156, 160 (1991) ("party cannot compel [specific] performance without alleging the achievement of such act or averring a sufficient excuse for its non-performance.") (citing *Granite Building Co. v. Saville*, 43 S.E. 351, 353 (1903)). Accordingly, CALNET must attach the purported employment agreements to demonstrate the plausibility of its claims, or at a minimum allege that all conditions precedent to the enforcement of its rights have been satisfied.

An understandable explanation for this omission may exist. Defendants note that while CALNET purports to quote from employment agreements with Scolaro and Menon, the absence of these documents is conspicuous. It may well be that the alleged agreements contain an

---

[55] "The elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004).

arbitration clause. Among other things, the existence of such a clause would prohibit them from alleging that it had satisfied all conditions to the enforcement of its rights.

The claim also fails because CALNET also alleges without providing any factual support whatsoever that Defendants diverted work that otherwise would have gone to CALNET. However, on its face, there is nothing plausible about this claim. It would have to allege that it (1) was qualified and eligible for any such work; (2) was ready, able and willing to do the work; and (3) would have won the contract awards. *See Filak v. George*, 594 S.E.2d 610, 615-616.

WHEREFORE, Defendants CloudSilver, Scolaro and Menon respectfully request that the Court enter an order (1) dismissing the Amended Complaint in its entirety; and (2) awarding the fees and costs associated with this Motion.

Dated: June 16, 2014                                             Respectfully submitted,


                                                                 _____/s/_____
                                                                 Lee E. Berlik (VSB# 39609)
                                                                 Mary M. Baker (VSB# 38258), Of Counsel
                                                                 BERLIKLAW, LLC
                                                                 1818 Library Street, Suite 500
                                                                 Reston, Virginia  20190
                                                                 Tel: (703) 722-0588
                                                                 Fax: (888) 772-0161
                                                                 LBerlik@berliklaw.com
                                                                 MBaker@berliklaw.com
                                                                 *Counsel for Defendants CloudSilver,
                                                                 Scolaro and Menon*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 16, 2014, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

> John M. Remy, Esq.
> JACKSON LEWIS P.C.
> 10701 Parkridge Blvd.
> Suite 300
> Reston, Virginia 20191
> Telephone: (703) 483-8300
> Facsimile: (703) 483-8301
> remyj@jacksonlewis.com
> *Counsel for Plaintiff*

>                   /s/
> Lee E. Berlik (VSB# 39609)
> Mary M. Baker, Of Counsel (VSB#38258)
> BERLIKLAW, LLC
> 1818 Library Street
> Suite 500
> Reston, Virginia  20190
> Tel: (703) 722-0588
> Fax: (888) 772-0161
> LBerlik@berliklaw.com
> *Counsel for Defendants CloudSilver, Scolaro and Menon*